BACKGROUND
EAGAN, Judge.
This is an action seeking damages for personal injuries allegedly sustained by the plaintiff, Virginia A. Lehner, on premises owned and controlled by the defendant, Mohegan Tribal Gaming Authority. The plaintiff alleges that on August 14, 2002, at approximately 9:30 p.m., while she was walking in the area of the Rising Moon food court at the Mohegan Sun, she slipped as the result of an accumulation of ice and liquid on the floor and sustained personal injuries and damages caused by the negligence of the defendant, its agents or servants and/or employees.
The defendant admits that the plaintiff was a patron and invitee lawfully upon the premises and that the premises were owned, operated, maintained and controlled by the defendant. The defendant further denies the allegations as to the cause of the injury and as to negligence on the part of the defendant and files a special defense alleging contributory or comparative negligence on the part of the plaintiff.
TRIAL
On June 10, 2004, this case proceeded to trial. The evidence established the following facts.
On August 14, 2002, the plaintiff was employed at the Connecticut Valley Hospital as a licensed practical nurse. At approximately 7 p.m., she and her son, Scott Parent, arrived at the casino. At approximately 9 p.m., she and her son entered the food court in order to obtain something to eat. She was wearing sneakers and as she approached the salad area, approximately in front of the bakery section of the Rising Moon food court, she slipped on some ice/liquid. She indicated that her left foot slid forward but she was able to steady herself with the help of her son, and did not- fall to the floor. She examined the floor at this time in the area of her slip and saw there what she variously described as ice and soda; or ice, soda and a liquid. She further indicated that there were employees in the bakery area who witnessed her slip, but no one came to her assistance. She did not know how long the ice and liquid were on the floor before her slip. Her observation of the material came after the incident.
Immediately after the slip, she felt arm and leg pain, but continued to a table, sat down and ate her meal. After finishing her meal, she went home and to bed. The next day, she had pain in her left hip, leg and the left side of her lower back. She indicated that she never had a previous injury to this part of her body. On Friday following the incident, she made a report to the casino concerning her slipping and also visited her family doctor. By August 21, 2002, her lower back pain as well as her left leg sciatic problem had increased considerable. She had an MRI and the doctor recommended no surgery, although she was still in constant discomfort. The doctor mentioned epidural injections which *324 she elected not to receive. The medical prescriptions she received give her no relief. She last saw her orthopedic doctor on September 11, 2003, and since the time of the accident, has been limited to light duty, no gardening and has experienced pain and discomfort while driving and sleeping.
The testimony of Scott Parent corroborated the testimony of the plaintiff.
As a result of her complaint to the casino on August 8, 2002, the casino checked the area; their records concerning the alleged incident; and with their employees assigned to the area at the time of the incident. The casino’s records indicate that the floor in the area of the alleged slip is continuously checked by a maintenance person who is assigned that duty at all times the facility is open. The check is done every 10 to 15 minutes. Photographs of the area where the plaintiff stated she slipped were taken and said photographs have been admitted as exhibits in this case. The defendant further stated through the Director of Environmental Services that a patron’s safety is the number one concern of the casino. He further stated that the superintendent, shift manager, department manager, as well as the maintenance person assigned to the area, made periodic rounds of the area. He indicated that if any problems were observed, a sign would have been placed warning the public immediately and clean-up would start soon thereafter. Probably anywhere from five to fifteen minutes after the sign had been placed.
Defendant further established that the defendant has a written policy which dictates that areas in the food service departments be inspected and cleaned at all times and that there was an attendant assigned to each area.
The plaintiff was not able to identify how long the liquid of ice and soda had been on the floor before she slipped. However, it was her feeling that it had been there for some time, but she had no actual proof of this allegation.
DISCUSSION
Jurisdiction is vested in this Court pursuant to Tribal Ordinance 95-4 “An Ordinance Establishing the Gaming Disputes Court.” This particular case is brought pursuant to the Mohegan Torts Code, MTO 2001-07, which is the exclusive means for the adjudication of tort claims against the Mohegan Tribal Gaming Authority by patrons of the casino. MTO 2001-07, Sec. 4(D).
MTO 2001-07, Section 5 A(20) defines a “Tort” as “an injury to a person caused by a breach of a legal duty to that person ... ”; Section 5 A(8) defines a “duty” as an “obligation ... to conform to a particular standard of conduct”, while Section 5 A(10) defines “Fault” as “... the failure to fulfill a legal duty”. Negligence is defined in Section 5 A(15) to mean “conduct that falls below the standard established by law or custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances”. The essence of Section 5 A(8)(10)(15)and (20) is to impose a duty on the defendant to exercise reasonable care to maintain its premises in a reasonably safe condition for reasonably anticipated uses by its patrons, invitees and guests. In determining whether the defendant breached any duty it owed the plaintiff in the instant case, MTO 95-4 states:
Section 301 Sources of Tribal Law. The substantive law of the Mohegan Tribe for application of the Gaming Disputes Court shall be:
(a) The law as set forth in any Mohegan Tribal ordinances or regulations.
*325 (b) The General Statutes of Connecticut, as may be amended from time to time, are hereby adopted as and declared to be the positive law of the Mohegan Tribe for application by the Gaming Disputes Court, except as such statutes are in conflict with Mohegan Tribal Law.
(c) The common law of the State of Connecticut interpreting the positive law adopted in Section 301(b), above, which body of law is hereby adopted as and declared to be the common law of the Mohegan Tribe for application by the Gaming Disputes Court, except as such common law is in conflict with Mohegan Tribal Court.
Plaintiff argues that defendant owed the plaintiff, as a patron and invitee, a duty to keep the floor of the Rising Moon food court free of slippery, wet substances and that the defendant breached its duty by failing to remedy this dangerous condition, which it knew or should have known, existed. The issue before this Court is, therefore, one of constructive notice and whether there is sufficient evidence to find that the liquid substance plus ice on the floor of the Rising Moon had existed for such a length of time that the defendant’s employees should have discovered it in the exercise of due care in time to remedy it.
There was no evidence as to how long the liquid substance plus ice was on the floor in the area in which plaintiff slipped. The plaintiff had no idea how long the puddle existed and no other witnesses or documentation were produced from which this Court could infer how long the liquid had been there or, in fact, how it came to be there. Although the plaintiff produced documentation establishing the defendant’s policy to keep this area clean at all times, there was no evidence that this policy was violated. The mere fact that this substance was on the floor at the time the plaintiff fell, does not by itself establish a failure of duty of inspection by the defendant.
It is the plaintiffs burden to establish that the condition existed for a sufficient period of time such that the defendant should have, in the exercise of due care, discovered it. The plaintiff has failed to do this. Edwards v. F.W. Woolworth, Co., 129 Conn. 245, 27 A.2d 163 (1942); Morris v. King Cole Stores, 132 Conn. 489-494, 45 A.2d 710 (1946); Markee v. Turner, 140 Conn. 701, 704, 103 A.2d 533 (1954). The evidence is this case fails to show more than the presence of an ice/liquid substance on the floor. The mere existence of the liquid and ice on the floor does not by itself warrant a finding that defendant knew or should have known of its existence in the exercise of reasonable care.
Judgment shall, therefore, enter for the defendant,